```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ELLEN GOLDEN and STEWART GOLDEN,

                        Plaintiffs,          MEMORANDUM & ORDER
                                             04-CV-2841(JS)(ARL)

        -against-

WYETH, INC. f/k/a AMERICAN HOME
PRODUCTS and WYETH PHARMACEUTICALS
f/k/a WYETH-AYERST PHARMACEUTICALS,
INC.,

                        Defendants.
----------------------------------------X
APPEARANCES
For Plaintiffs:    Howard L. Wexler, Esq.
                   Michael B. Sena, Esq.
                   Herzfeld & Rubin, P.C.
                   40 Wall St.
                   New York, NY 10005

For Defendants:    Adam Brent Siegel, Esq.
                   Daniel L. Cendan, Esq.
                   Freshfields Bruckhaus Deringer US LLP
                   601 Lexington Avenue, 31st Floor
                   New York, NY 10022

                   Alan E. Rothman, Esq.
                   Kaye Scholer, LLP
                   425 Park Avenue
                   New York, NY 10022

                   Heidi Lynn Levine, Esq.
                   Eric M. Falkenberry, Esq.
                   Jennifer Ann Fuerch, Esq.
                   Leeanne Sara Neri, Esq.
                   Mamie Venita Jervis Wise, Esq.
                   Tiffany Lee Christian, Esq.
                   DLA Piper US LLP
                   1251 Avenue of the Americas, 27th Floor
                   New York, NY 10020-1104

                   Genevieve M. Spires, Esq.
                   Spring C. Potoczak, Esq.
```

Porzio Bromberg & Newman P.C.
100 Southgate Parkway
Morristown, NJ 07962

SEYBERT, District Judge:

Currently pending before the Court are: (1) Defendant Wyeth Pharmaceuticals, Inc.'s ("Defendant" or "Wyeth") motion to compel application of New Jersey law; and (2) Plaintiffs Ellen and Stewart Golden's ("Plaintiffs") motion to compel application of Pennsylvania law. For the following reasons, Defendant's motion is GRANTED IN PART and DENIED IN PART and Plaintiffs' motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiffs commenced this action against Defendant in connection with injuries Plaintiffs suffered after Mrs. Golden's use of the hormone therapy drug Prempro from January 1998 through December 2002. (Compl. ¶ 3.) During all relevant times, Plaintiffs were residents of New Jersey. (Pls.' Br. for Penn. Law, Docket Entry 57-4, at 3.) Defendant is a Delaware corporation with its principal place of business in Pennsylvania which designed, tested, manufactured, marketed, and distributed Prempro. (Compl. ¶ 5.)

Plaintiffs allege that Mrs. Golden's ingestion of Prempro proximately caused her to develop a malignant breast tumor, which required a mastectomy of the right breast in January 2003. (Compl. ¶ 9.) Although the Complaint does not

2

explicitly specify many other factual allegations, the parties agree that Mrs. Golden was prescribed Prempro by a New Jersey physician, filled her prescriptions at a New Jersey pharmacy, and took Prempro in New Jersey during the relevant period. (Def.'s Br. for N.J. Law, Docket Entry 56, at 2; Pls.' Br. for Penn. Law at 3; Pls.' Fact Sheet, Docket Entry 56-2, attached as Ex. 1 to the Falkenberry Aff.)

I. Choice-of-Law

Currently, Defendant moves for application of New Jersey law while Plaintiffs move for application of Pennsylvania law. The Court will first address the legal standard governing a choice-of-law analysis before turning to the specifics of the parties' arguments.

A. Legal Standard

A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941); Bigio v. Coca-Cola Co., 675 F.3d 163, 169 (2d Cir. 2012). "Under New York choice-of-law rules, '[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved.'" Licci v. Lebanese Canadian Bank, SAL, 672 F.3d 155, 157 (2d Cir. 2012) (alteration in original) (quoting Wall v. CSX Transp., Inc., 471

3

F.3d 410, 415 (2d Cir. 2006)). If no actual conflict exists and New York is one of the jurisdictions involved, the court may simply apply New York law. See id.

If there is a conflict, the next inquiry is whether the claims sound in tort or contract. See Keefus Ltd. P'ship v. Fromkin Energy, LLC, No. 06-CV-0987, 2007 WL 2454217, at *3 (N.D.N.Y. Aug. 23, 2007). Where, as here, the claims sound in tort, New York courts apply an "interest analysis" to determine choice-of-law issues. See AllGood Entm't, Inc. v. Dileo Entm't & Touring, Inc., 726 F. Supp. 2d 307, 315 (S.D.N.Y. 2010). This is a "flexible approach intended to give controlling effect to the law of the jurisdiction which, because of its relationship or contract with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." Id. (internal quotation marks and citation omitted).

The interest analysis distinguishes laws that regulate conduct from those that involve loss allocation. See id. Where a plaintiff's claims are conduct-regulating, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." Id. "These include the place where the injury occurred, the place where the conduct causing the injury occurred, the domicile, residence, nationality, place of incorporation and place of business of the

4

parties, and the place where the relationship, if any, between the parties is centered." Id. In contrast, where a plaintiff's claims are loss-allocating, "the site of the tort is less important, and the parties' domiciles are more important." Globalnet Financial.com, Inc. v. Frank Crystal & Co., 449 F.3d 384, 384-85 (2d Cir. 2006).

B. Substantive Claims

To begin, the Court notes that with respect to Defendant's motion, it is apparently undisputed that there is a conflict between New York and New Jersey law and between New Jersey and Pennsylvania law in all relevant respects. (See Pls.' Br. for Penn. Law at 3-4 n.1 (comparing New York, New Jersey, and Pennsylvania law).) Moreover, neither party disputes that the causes of action at issue here implicate conduct-regulating laws. See In re Rezulin Prods. Liab. Litig., 210 F.R.D. 61, 70 (S.D.N.Y. 2002) (describing the connection between pharmaceutical product liability claims and conduct-regulating laws).

What is in dispute, however, is what state's laws should apply to Plaintiff's claims. Defendant argues that New Jersey law should apply because Plaintiffs resided in New Jersey, Mrs. Golden ingested Prempro in New Jersey, and Mrs. Golden was prescribed Prempro in New Jersey. (Def.'s Br. for N.J. Law at 7.) Plaintiffs counter that Pennsylvania law should

5

apply because "the Prempro at issue was presumably designed, developed, and manufactured in Pennsylvania." (Pls.' Br. for Penn. Law at 3.) The Court agrees with Defendant that, under New York's choice of law analysis, New Jersey law should apply to Plaintiff's substantive claims.

Courts to address this issue have consistently made clear that the location of the tort is where the plaintiff was injured, rather than the origin of the conduct causing injury. See Youngman v. Robert Bosch LLC, --- F. Supp. 2d ----, 2013 WL 527269, at *5 (E.D.N.Y. Feb. 11, 2013) ("Virtually every pertinent case confirms that a tort 'occurs' for purposes of choice-of-law analysis at the location of the accident." (collecting cases)). Here, Mrs. Golden was prescribed Prempro, filled her prescription, and took Prempro all in New Jersey, each a significant fact in the Court's choice-of-law analysis. See Doe v. Hyland Therpeutics Div., 807 F. Supp. 1117, 1131 n.16 (S.D.N.Y. 1992) ("Where rules of product liability are involved, we think the forum where the products are sold and consumed has the predominant interest in implementing the rules that form the basis for the 'reasonable expectation of the parties' involved."); Devore v. Pfizer, Inc., 58 A.D.3d 138, 141, 867 N.Y.S.2d 425 (1st Dep't 2008) ("Michigan has far greater significant contacts with the litigation. Not only do plaintiffs live and work there, but in addition, it is the

jurisdiction where the alleged injuries occurred.").

Thus, in combination, these facts clearly weigh in favor of applying New Jersey law to Plaintiffs' underlying claims. See DiBartolo v. Abbott Labs., 914 F. Supp. 2d 601, 610 (S.D.N.Y. 2012) ("Here, DiBartolo is a resident of New York, was prescribed Humira in New York, purchased and used Humira in New York, and suffered injury in New York. It therefore appears that New York has the strongest interest in this case."). Accordingly, Defendant's motion for application of New Jersey law, insofar as it pertains to Plaintiffs' underlying claims, is GRANTED, and Plaintiffs' motion in this regard is DENIED.

C. Punitive Damages

Plaintiffs further argue that, even putting aside the applicable law regarding their substantive claims, the Court should apply Pennsylvania law to their request for punitive damages. (Pls.' Br. for Penn Law at 7-8.) Defendant maintains that Plaintiffs are inappropriately forum shopping. (Def.'s Reply Br., Docket Entry 58, at 6.) The Court agrees with Plaintiffs that, despite the application of New Jersey law to their substantive claims, Pennsylvania law should apply to their punitive damages.[1]

---

[1] The parties do not squarely address the extent to which New York and Pennsylvania law differ in this regard. Thus, insofar as Pennsylvania law does not conflict with New York law, the law of the forum will apply.

7

Preliminarily, the Court notes that "under the doctrine of depecage, which is often applied by New York courts . . . the rules of one legal system are applied to regulate certain issues arising from a given transaction or occurrence, while those of another system regulate the other issues." Hutner v. Greene, 734 F.2d 896, 901 (2d Cir. 1984) (internal quotation marks and citations omitted); see also Fed. Hous. Fin. Agency v. Ally Fin., Inc., No. 11-CV-7010, 2012 WL 6616061, at *5 (S.D.N.Y. Dec. 19, 2012) ("New York embraces a choice-of-law doctrine known as dépeçage . . . ."). Thus, although New Jersey law governs Plaintiffs' substantive claims, this does not necessarily end the Court's inquiry.

Furthermore, punitive damages, like Plaintiffs' claims discussed above, are conduct-regulating. See Deutsch v. Novartis Pharms., Corp., 723 F. Supp. 2d 521, 524 (E.D.N.Y. 2010) ("It is well-established in this Circuit that punitive damages are conduct-regulating issues."); Saxe v. Thompson Med. Co., No. 83-CV-8290, 1987 WL 7362, at *1 (S.D.N.Y. Feb. 20, 1987) ("[P]unitive damage awards are essentially conduct-regulating rather than loss-allocating."). The inquiry with respect to punitive damages, however, differs somewhat from Plaintiffs' underlying claims. Punitive damages are designed to punish the defendant, and not to compensate the plaintiff, thus necessitating a defendant-focused inquiry. See, e.g., Dobelle

8

v. Nat'l R.R. Passenger Corp., 628 F. Supp. 1518, 1528-29 (S.D.N.Y. 1986) ("[T]he interest of plaintiff's domicile has little relevance since punitive damages are designed to punish a defendant, not to compensate a plaintiff."); see also James v. Powell, 19 N.Y.2d 249, 259, 279 N.Y.S.2d 10, 18, 225 N.E.2d 741, 746-47 (1967) ("Although it is clear that the measure of compensatory damages is determined by the same law under which the cause of action arises . . . [a]n award of punitive damages, on the other hand, depends upon the object or purpose of the wrongdoing'" (emphasis in original)).

Particularly instructive on this point is Deutsch v. Novartis Pharms. Corp., 723 F. Supp. 2d 521 (E.D.N.Y. 2010). There, although the parties agreed that New York law applied to the plaintiff's substantive cause of action, the Court held that the law of New Jersey, where the defendant was located, should apply to the issue of punitive damages. Id. at 524-26. The Court found that the plaintiffs' "complaints reflect that their requests for punitive damages stem from Novartis's alleged corporate misconduct." Id. at 525.

Similarly here, Plaintiffs raise allegations such as that Defendant inadequately reported testing and clinical trial results (Compl. ¶ 24) and that Defendant omitted or concealed information from the Food and Drug Administration ("FDA") (Compl. ¶ 32(g)). See Deutsch, 723 F. Supp. 2d at 525

9

(discussing the plaintiffs' allegations that the defendant concealed information from the FDA and failed to disclose information concerning the connection between the drugs at issue and osteonecrosis). Defendant's attempts to distinguish Deutsch from the instant case are unavailing, as both involve essentially the same types of allegations and considerations.

In fact, and while Defendant is correct in that Pennsylvania's policy on punitive damages focuses in part on protecting its residents, see Kelly v. Ford Motor Co., 933 F. Supp. 465, 471 (E.D. Pa. 1996), "[i]n Pennsylvania, the purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others like him from similar conduct," Bryant v. Wyeth, 879 F. Supp. 2d 1214, 1225 (W.D. Wash. 2012) (internal quotation marks and citation omitted). Thus, the Court finds that with respect to punitive damages, Pennsylvania has the greatest interest in application of its laws.

Accordingly, Plaintiffs' motion for application of Pennsylvania law, insofar as it seeks application of Pennsylvania law for their punitive damages, if any, is GRANTED, and Defendant's motion for application of New Jersey law in this respect is DENIED.

## CONCLUSION

For the foregoing reasons, Defendant's motion to apply

New Jersey law to Plaintiff's substantive claims is GRANTED and Plaintiffs' motion for application of Pennsylvania law in this respect is DENIED. However, Defendant's motion for application of New Jersey law to Plaintiffs' request for punitive damages is DENIED and Plaintiffs' motion in this respect is GRANTED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: August 20, 2013
 Central Islip, NY